```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

UNITED STATES OF AMERICA

vs.                                              2:11-cr-40-FtM-29SPC

EDDY LUIS JOSE ESTRELLA
_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on defendant Eddy Estrella's Motion to Suppress Evidence (Doc. #41) filed on July 22, 2011. The Government's Response (Doc. #44) was filed on August 1, 2011. On September 12, 2011, the assigned magistrate judge issued a Report and Recommendation (Doc. #63) recommending that the Motion to Suppress Evidence be denied without an evidentiary hearing. Defendant filed Objections (Doc. #69) asserting that an evidentiary hearing was necessary. By an Order (Doc. #70) filed October 5, 2011, the undersigned determined that an evidentiary hearing was necessary and scheduled such a hearing. On October 12, 2011, the undersigned conducted an evidentiary hearing on the motion to suppress. For the reasons set forth below, the Motion to Suppress Evidence (Doc. #41) is denied.

**I.**

In January 2011, the Lee County Sheriff's Office (LCSO) conducted an undercover narcotics investigation, with Detective David Lebid acting in an undercover capacity. On January 20, 2011, Detective Lebid purchased Oxycodone from Eddy Estrella (defendant

or Estrella), and discussed but declined to purchase a Sig Sauer 9 mm semi-automatic firearm which Estrella showed him. On January 27, 2011, Detective Lebid again met Estrella to purchase Oxycodone and a different firearm. It is alleged that during the January 27 transaction Estrella and Miguel Martinez robbed Detective Lepid at gunpoint, with Martinez using a Sig Sauer 9 mm firearm. Estrella and Martinez were both arrested on January 27, 2011, and Estrella was charged in two separate cases with various state criminal offenses. The Sig Sauer firearm was seized during the arrest, and a check showed that it had been reported stolen in April 2010, in Cape Coral, Florida.

On January 28, 2011, Estrella completed two forms for the Lee County Clerk's Office requesting that counsel be appointed in each of the two cases. Def.'s Exhs. D1, D2. The Lee County Clerk made a determination that Estrella was indigent, and made an interim appointment of the Public Defender.

Estrella made his initial appearance in Lee County Circuit Court on February 1, 2011, on the state charges, and the appointment of the state Public Defender was continued as to each of the state cases. The Public Defendant filed a Notice of Appearance on February 4, 2011. Def.'s Exh. D1.

Detective Lebid is and was married to Detective Maris Lebid of the Cape Coral Police Department (CCPD), who was assigned to the Property Crimes unit. After the robbery attempt, Detective Lebid

told his wife that one of the firearms recovered had been stolen in Cape Coral.  In due course, Detective Maris Lebid told other members of the CCPD Property Crimes unit about the firearm, and Detectives Jason Hicks and Robert Luzarraga decided to follow up with an interview of both Estrella and Martinez.  Detective Maris Lebid requested a photograph of the stolen firearm from Detective Lebid, who sent it by email on February 3, 2011.  Def.'s Exh. F. The email or a printed copy of the photograph was given to Detectives Hicks and Luzarraga for their use in the interviews. Both detectives testified that their purpose in interviewing Martinez and Estrella was to attempt to close the Cape Coral vehicle burglary case, not to further investigate the LCSO's robbery case.

On February 3, 2011, Detectives Hicks and Luzarraga appeared unannounced at the Lee County Jail to interview Martinez, and then Estrella.  The interview with Estrella was recorded, Def.'s Exh. A, and eventually transcribed, Def.'s Exh. B.

Estrella first asked "what's up", and the detectives identified themselves as being from the CCPD.  Detective Luzarraga informed Estrella that they were not there to discuss what happened the other night in Lee County, but rather wanted to talk about a burglary in April 2010 in Cape Coral where a firearm was stolen. When Estrella asked if he was getting charged, the detectives said "no" multiple times.  Detective Luzarraga then gave full and

complete Miranda warnings to Estrella before speaking with him, saying:

> you have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer questions without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering anything -- I'm sorry. Let me read that one again. You also have the right to stop answering at any time until you talk to a lawyer. Do you understand these rights I've explained to you?

Def.'s Exh. B, p. 123[1]. Estrella responded "Yeah, I understand all right." Id. The detectives asked Estrella if he wanted to talk to them, and gave Estrella the location of the vehicle burglary. Estrella said he would speak with the detectives. The detectives then proceeded to ask Estrella about the gun that has been stolen during the vehicle burglary in Cape Coral in April 2010. Estrella recognized the gun as being the one Miguel (Martinez) had. Estrella identified two pictures of the gun, and then said he had been charged for the gun in an armed robbery charge, but did not understand how that happened when Miguel pointed the gun ad Estrella's chest, took Estrella's gun, and took the detective's money. The detective said they knew nothing about that case, and were not there to ask about it. Questioning continued, and Estrella made certain incriminating statements with respect to the

---

[1]The Court will use the page numbers at the lower left corner of Exhibit B.

January 27, 2011 armed robbery. Because Estrella was willing to talk about the robbery, the detectives pursued some questions directly related to the circumstances of the robbery itself and the gun. The detectives also inquired to one degree or another about other areas, including prior robbery charges, the fact that the robbery of Detective Lepid had been recorded, whether Estrella knew the person was a cop, whether they did not just sell the firearm because they got greedy, whether Estrella had a part in the robbery, and Estrella's conversations with Martinez preceding the robbery.

On March 30, 2011, a federal grand jury indicted Estrella and Martinez in the instant case based upon facts that were the basis of the state charges. Pursuant to this Indictment, Estrella is now charged as follows: Count 1, distribution of a controlled substance (January 20); Count 2, use or carrying a firearm during and in relation to a drug offense, or possession of a firearm in furtherance of a drug offense (January 20); Count 3, possession of a firearm by a convicted felon (January 20); Count 4, distribution of a controlled substance (January 27); Count 5, conspiracy to commit "Hobbs Act" robbery (January 27); Count 6, "Hobbs Act" robbery (January 27); Count 7, conspiracy to use or carry a firearm during and in relation to a crime of violence, or possession of a firearm in furtherance of a crime of violence (January 27); Count 8, use or carrying two firearms during and in relation to a crime

of violence, or possession of the same two firearms in furtherance of a crime of violence (January 27); and Count 10[2], possession of a firearm by a convicted felon (January 27). The state charges against Estrella based on the armed robbery were dropped in favor of the federal prosecution.

## II.

Defendant argues that the February 3, 2011, interview was conducted in violation of his Sixth Amendment right to counsel, although the precise analysis has morphed somewhat during the course of the proceedings. (Doc. #41, pp. 5-6.) For the reasons set forth below, the Court finds that the February 3, 2011, interview of defendant was not a violation of his Sixth Amendment right to counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment "is limited by its terms: it does not attach until a prosecution is commenced. [ ] We have, for purposes of the right to counsel, pegged commencement to the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment". Rothgery v. Gillespie County, Tex., 554 U.S. 191, 198 (2008)(internal quotations and citations omitted). Once the

---

[2]Count 9 pertains to co-defendant Miguel Angel Martinez only.

Sixth Amendment right to counsel attaches, it encompasses offenses "that, even if not formally charged, would be considered the same offense under the Blockburger[3] test." Texas v. Cobb, 532 U.S. 162, 173 (2001).

Additionally, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. 778, ___, 129 S. Ct. 2079, 2085 (2009)(citations omitted). "Interrogation by the State is such a stage." Id. A Sixth Amendment violation occurs when (1) government agents (2) deliberately elicit incriminating statements from an accused after the Sixth Amendment right to counsel had attached, outside the presence of counsel, and (3) in the absence of any waiver of his Sixth Amendment rights. Fellers v. United States, 540 U.S. 519, 524–25 (2004).

It is clear that Estrella had a right to counsel during the February 3, 2011 interview. Because he had been given an initial appearance on February 1, 2001, Estrella had a Sixth Amendment right to counsel during the February 3, 2011, interview as it related to the state offenses. Fellers, 540 U.S. at 522; Cobb, 532 U.S. at 163. Because he was in custody, Estrella also had a Fifth Amendment right to counsel during the February 3, 2001, interview

---

[3] Blockburger v. United States, 284 U.S. 299 (1932).

as it related to any offense. Miranda v. Arizona, 384 U.S. 436 (1966).

It is also clear that Estrella was interrogated outside the presence of counsel by law enforcement agents who deliberately elicited incriminating statements from an accused after the Sixth Amendment right to counsel had attached. The Cape Coral detectives were state law enforcement officers who are obviously state government agents. They asked questions of Estrella concerning both the Cape Coral vehicle burglary and the Lee County robbery after Estrella's Sixth Amendment right to counsel to the state robbery-related charges had attached. The interview was conducted outside the presence of counsel.

The dispositive issue is whether Estrella properly waived his Sixth Amendment right to counsel. It is clear that a person has the ability to waive his Sixth Amendment right to counsel. "Our precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." Montejo, 129 S. Ct. at 2085 (citations omitted). Further, a "defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. [ ] And when a defendant is read his Miranda rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the

-8-

Miranda rights purportedly have their source in the Fifth Amendment . . . ." Montejo, 129 S. Ct. at 2085 (internal citation omitted).

Defendant's written motion relied upon Michigan v. Jackson, 475 U.S. 625, 636 (1986), which held that police interrogation after a defendant's assertion of his right to counsel at a proceeding such as an initial appearance was presumptively invalid under the Sixth Amendment. The complete answer to this argument is Montejo, which expressly overruled Michigan v. Jackson. Montejo, 129 S. Ct. at 2091.

After Montejo, there is no presumption or *pre se* rule that law enforcement officers cannot seek to interview of defendant after an initial appearance at which the defendant has requested counsel. That does not mean, however, that any interview will be lawful. Rather, Montejo held that law enforcement must still satisfy a three tier set of prophylactic rules, which it held were sufficient to protect the Sixth Amendment right to counsel.

> Under Miranda's prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right. [ ] Under Edwards'[4] prophylactic protection of the Miranda right, once such a defendant has invoked his right to have counsel present, interrogation must stop. [ ] And under Minnick's[5] prophylactic protection of the Edwards right, no subsequent interrogation may take place until counsel is present, whether or not the accused has consulted with his attorney. [ ]

---

[4]Edwards v. Arizona, 451 U.S. 477 (1981).

[5]Minnick v. Mississippi, 498 U.S. 146 (1990).

Montejo, 129 S. Ct. at 2089-90 (internal citations and quotations omitted). Thus, although a defendant no longer enjoys a presumption that his waiver of his right to counsel was invalid, the defendant may still assert that his waiver was invalid under one or more of the three preventative measures.

At the evidentiary hearing argument, defense counsel stated that only the first of the three prophylactics is at issue in the case. Defendant asserts that the waiver of his Miranda rights was the product of unlawful police trickery, and therefore was not voluntary, knowing, and intelligent under Miranda. Because of this, defendant asserts, the entire interview must be suppressed.

It is well-established that a suspect may waive a Miranda right after properly being give the Miranda warnings if the waiver is made "voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. As the Supreme Court stated later:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (citations omitted). The burden of establishing such a waiver is upon the government. Miranda, 384 U.S. at 475; Berghuis v. Thompkins, 560 U.S. \_\_\_, \_\_,

130 S. Ct. 2250, 2260 (2010)("statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [his] Miranda rights when making the statement." (quotation and alteration omitted)).

Defendant argues that there was "collusion" between the CCPD detectives and the LCSO, which lead to the February 3, 2011, interview for the purpose of obtaining admissions as to the robbery of Detective Lepid under the guise of attempting to close the Cape Coral vehicle burglary. Defendant asserts that he was misled when the detectives stated they were there to investigate the Cape Coral vehicle burglary, when in fact they were there to further investigate the robbery of Detective Lepid.

Certain kinds of police trickery or deception can undoubtedly render a waiver invalid. United States v. Farley, 607 F.3d 1294, 1328-29 (11th Cir. 2010), cert. denied, 131 S. Ct. 369 (2010). In this case, the Court finds that there was no police deception, and that the waiver was knowing, free, and intelligent.

Having heard the testimony of the officers, and reviewed the exhibits, the Court concludes that the detectives did not engage in deception or trickery. The Court finds that the officers went to the interview with the intent to investigate and hopefully close the Cape Coral vehicle burglary, not further investigate the LCSO robbery case. The Court found the detectives to be credible

witnesses, and their testimony is supported not only be the interview itself but by the email which followed it. Def.'s Exh. G.

Additionally, even if the detectives were being deceptive when they said they were investigating the Cape Coral case, nothing about the statement rises to the level which would deprive defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. E.g., Farley, 607 F.3d at 1326-31 (telling suspect interview was part of terrorism investigation when they actually suspected he was planning to have sex with a child did not render waiver invalid). The totality of the circumstances surrounding the interrogation clearly support the finding that defendant's waiver was valid.

Accordingly, it is now

**ORDERED:**

Defendant Eddy Estrella's Motion to Suppress Evidence (Doc. #41) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of October, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of Record